IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| TOM J. FRYE, | ) | |
| | ) | |
| Plaintiff, | ) | 4:98CV3105 |
| | ) | |
| v. | ) | |
| | ) | |
| YOUNG MEN'S CHRISTIAN ASSOCIATION of Lincoln, Nebraska, | ) ) ) | MEMORANDUM OPINION |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on plaintiff Tom Frye's motion for contempt (Filing No. 31). The Court held a hearing on June 30, 2009, to determine whether an ordinary, reasonable person would find the ideas and expression of Kastleland and KnightQuest substantially similar. Upon review of the motion, the briefs and evidentiary submissions of the parties, the testimony of the witnesses, the arguments of counsel, and the applicable law, the Court finds no substantial similarity of ideas and expression and will deny the motion.

Frye asserts that the YMCA violated his copyright, and therefore this Court's injunction, by copying Kastleland and running the program free of charge. (*See* Filing No. 31, at 3.) The YMCA argues that KnightQuest does not infringe on the Kastleland copyright because the copyright law protects the author's expression of an idea but not the idea itself and

because Frye is attempting to use the copyright law to protect an idea.  (Filing No. 59, at 3-4.)  The Copyright Act provides that "[i]n no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work."  17 U.S.C. § 102(b).  In order to prove copyright infringement, it is Frye's burden to show that (1) he owns the copyright in Kastleland; (2) the YMCA had access to it; and (3) that there is substantial similarity between Kastleland and KnightQuest in both ideas and expression.  *See Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117, 120 (8th Cir. 1987).  The Court previously found that Frye owns the Kastleland copyright and that the YMCA had access to it.  (*See* Filing No. 69, at 4.)  Therefore, the YMCA should be held in contempt for violating the injunction if the Court finds substantial similarity between the two productions.

Because there must be substantial similarity of both idea and expression for infringement to lie, the Court engages in a two-step analysis.  "First, similarity of ideas is analyzed extrinsically, focusing on objective similarities in the details of the works.  Second, if there is substantial similarity in ideas, similarity of expression is evaluated using an intrinsic test depending on the response of the ordinary, reasonable person to the forms of expression."  *Id.* (citing *McCulloch v. Albert E.*

*Price, Inc.*, 823 F.2d 316, 319 (9th Cir. 1987).  The distinction between idea and expression is not always readily apparent.  Where, as here, the alleged plagiarist

> does not take out a block in situ, but an abstract of the whole, decision is . . . troublesome.  Upon any work, and especially upon a play, a great number of patterns of increasing generality will fit equally well, as more and more of the incident is left out.  The last may perhaps be no more than the most general statement of what the play is about, and at times might consist only of its title; but there is a point in this series of abstractions where they are no longer protected, since otherwise the playwright could prevent the use of his "ideas," to which, apart from their expression, his property is never extended.

*Nichols v. Universal Pictures Corp.*, 45 F.2d 119, 121 (2d Cir. 1930)(Hand, J).  In *Nichols*, the author of *Abie's Irish Rose*, a popular copyrighted play, brought an action against the producer of *The Cohens and The Kellys*, alleging infringement.  Although the play and the movie shared many similarities, the court held that with respect to the plot, the "only matter common to the two is a quarrel between a Jewish and an Irish father, the marriage of their children, the birth of grandchildren and a reconciliation" and with respect to the characters that "[t]he defendant has not taken . . . more than their prototypes have contained for many decades."  *Id.* at 122.  As in *Nichols*, the

Court here will find that although a similarity of ideas exists between the two performances, much of what is similar is not protected by the copyright law.

A similarity of ideas exists between Kastleland and KnightQuest.  Both have a medieval theme, both involve a central evil character (druid of darkness, sorceress/queen) served by minions (dragons of dread, shadow lords) representing negative traits (fear, lies, selfishness, foul-mouth, false dreams, hatred, and darkness for Kastleland, hate, lies, disrespect, irresponsibility, and fear for KnightQuest) which are overcome by positive traits (courage, truth, nobility, self-control, saying no, love and light for Kastleland, and caring, honesty, respect, responsibility for KnightQuest).  Campers earn the ability to defeat the minions by acquiring the positive traits (via quests in Kastleland and knight training in KnightQuest) through the completion of a variety of physical challenges (soft sword fighting, archery, climbing, and shield challenges are examples both plays share), staged at defendant YMCA's Camp Kitaki.

Much of the similarity between the two productions is not protected by the law of copyright.  This is because most of the plot of Kastleland is unprotectable idea.  As in *Nichols*, the characters in Kastleland are skeletal archetypes and the plot is largely composed of *scènes à faire*, which are plot incidents that are commonplace or stock or that are necessarily dictated by a

story's general themes.  Robert A. Gorman, Copyright Law 107-08 (2d ed. 2006).  Here, the general theme is that of a medieval fantasy setting, and this setting dictates much of what exists in either performance.  One might expect to find castles, dragons, knights, wizards, sorceresses, and a host of other stock creatures and characters in such a play.  Moreover, what the YMCA calls the "adventure trails" concept is in the public domain, or at least it is intellectual property that Frye does not own.  An adventure trail with a medieval theme must necessarily contain certain elements, many of which are common to both Kastleland and KnightQuest, which explains some of the similarity between the two productions.  This is not to say, however, that these unprotectable elements could not have been selected, coordinated, or arranged in such a way as to create a protectable expression.  For example, in *Sheldon v. Metro-Goldwyn Pictures Corp.*, the court found a motion picture infringed a play because it had copied too many detailed plot incidents and scenes and arranged them in the same sequence.  81 F.2d 49 (2d Cir. 1936)(Hand, J.).

      Even if the Court assumes that the selection, coordination, or arrangement of the ideas expressed in Kastleland is protectable, however, the motion must be denied because the expression is not substantially similar.  As noted above, whether there is a substantial similarity of expression depends upon the response of an ordinary, reasonable person to the forms of

expression.  At the hearing on this motion, Frye presented two witnesses:  himself and Mikhala Lenzen.  Frye testified about his history with the YMCA and about how he developed Kastleland.  It was performed at Camp Kitaki from 1987-1998, and Frye was personally present for three of these performances.  However, Frye admits that there were multiple scripts for his play, that it changed in its details from performance to performance, and that some of it was "ad-libbed" as he went along.  Moreover, Frye was not present at the majority of the performances of Kastleland, nor has he seen KnightQuest performed.  As it relates to the response of an ordinary, reasonable person to the forms of expression, Frye's comparison of the two plays is accorded little weight.  Mikhala Lenzen saw one performance of Kastleland in the late 1990s when she was approximately eight years old, and one performance of KnightQuest in 2008.  However, some of the details of the Kastleland she observed (someone on a horse, the presence of a king, different activities) are not present in the copyrighted script.  Moreover, a decade had passed between her two experiences and she had grown from a small child to a young woman.  Still, Lenzen noted many similarities between the two plays.  But each of these similarities, medieval theme, dragons, knights, challenges, sword fighting, and so forth, were unprotectable *scènes à faire*.  Therefore, although Ms. Lenzen's testimony was credible and persuasive, she did not note any

instance in which an expression protectable by Frye's 1990 copyright appeared in KnightQuest.

Frye has thus failed to prove that KnightQuest is substantially similar to any protected expression in his Kastleland copyright.  Although in reviewing the scripts and the testimony of the witnesses the Court finds a number of similarities in the ideas behind the two plays, these expressions are not protected by the Copyright Act.  As noted above, concepts, themes, processes, and the like may not be copyrighted.  KnightQuest is not substantially similar to the protected expression of Kastleland and, therefore, it does not violate Frye's copyright and is not in violation of the injunction.  Therefore, the motion for contempt of the injunction will be denied.  A separate order shall be entered in accordance with this memorandum opinion.

DATED this 20th day of July, 2009.

BY THE COURT:

/s/ Lyle E. Strom
_____
LYLE E. STROM, Senior Judge
United States District Court